OCEANA FARMERS' MUTUAL TELEPHONE CO. *v.* UNITED HOME TELEPHONE CO.

1. TELEGRAPHS AND TELEPHONES—CARRIERS—MICHIGAN RAILROAD COMMISSION—JURISDICTION.

Where a controversy had arisen between two telephone companies as to the performance of a contract for physical connection between the properties of the two companies, jurisdiction was conferred upon the Michigan railroad commission by the filing with it of a petition for a hearing upon the matters in controversy by defendant company, and the court of equity was thereafter without jurisdiction to entertain a suit for specific performance of the contract.

2. SAME.

Resort should in the first instance be had to the railroad commission, unless the case is exceptional.

3. SAME.

Under Act No. 206, Pub. Acts 1913 (2 Comp. Laws 1915, § 6689 *et seq.*), telephone companies are declared to be common carriers and their general control is placed with the railroad commission.

4. SAME—PHYSICAL CONNECTION—RAILROAD COMMISSION—POWERS.

Under section 3 of said act (2 Comp. Laws 1915, § 6691), giving the railroad commission power to prescribe the standard of construction and equipment that shall be maintained by any person, copartnership, or corporation doing a telephone business and maintaining physical connection with the property of any other owner, physical connections made by virtue of contracts as well as those made by order of the commission were contemplated.

5. SAME—STATUTES—VALIDITY.

Section 6 of said act (2 Comp. Laws 1915, § 6694), authorizing the railroad commission to require that physical connection between telephone properties be made, is valid.

6. SAME—RAILROAD COMMISSION—EXCLUSIVE JURISDICTION.

Where the question involved is one of adequate service growing out of physical connection between two telephone companies, and the railroad commission had acquired jurisdiction before the institution of any proceedings in court, such jurisdiction is to the exclusion of that of the courts except as provided by Act No. 145, Pub. Acts 1915 (2 Comp. Laws 1915, § 8134).

7. SAME—STATUTES—CONSTITUTIONAL LAW—IMPAIRMENT OF CONTRACTS.

Act No. 206, Pub. Acts ·1913 (2 Comp. Laws 1915, § 6689 *et seq.*), giving the railroad commission general supervision over telephone companies, *held*, not in violation of the constitutional inhibition against the impairment of contracts. *Grand Rapids, etc., R. Co.* v. *Cobbs & Mitchell,* 203 Mich. 133.

OSTRANDER, J., dissenting.

Appeal from Oceana; Barton, J., presiding. Submitted January 28, 1919. (Docket No. 102.) Decided May 29, 1919.

Bill by the Oceana Farmers' Mutual Telephone Company against the United Home Telephone Com-

pany for the specific performance of a contract. From a decree for plaintiff, defendant appeals. Reversed, and bill dismissed.

*A. S. Hinds,* for plaintiff.

*Cross, Foote & Sessions,* for defendant.

OSTRANDER, J. (*dissenting*). The Michigan State Telephone Company, described as the party of the first part, and the Oceana Farmers' Mutual Telephone Company, second party, on the 18th of May, 1910, made an agreement which was reduced to writing and signed by them, respectively. The fifteenth clause of the contract reads:

"In case of failure to carry out any of the provisions embodied herein, and if continued without remedy or repair for thirty days after written notice or demand from either party to the other, said party complaining may terminate this contract by written notice."

The Michigan State Telephone Company, so it is charged, in June, 1916, sold to the United Home Telephone Company all of its territorial and other rights in Oceana county and conveyed and assigned to it all its contracts, rights and liabilities, and thereby substituted the said United Home Telephone Company as party of the first part in the contract above referred to. Under date March 5, 1918, the United Home Telephone Company notified the plaintiff that the switching service it had been rendering plaintiff under the contract would be discontinued on April 1, 1918, and again, on April 17, 1918, notified plaintiff that the said service would be discontinued on May 1, 1918. Plaintiff filed its amended bill of complaint on April 30, 1918, in which it asks, among other things, for an order restraining the United Home Telephone Company from suspending or discontinuing the switching

service aforesaid. It asked for other and further relief, and made the Michigan railroad commission a party defendant, it having been advised that the United Home Telephone Company had invoked the jurisdiction and action of said commission. The United Home Telephone Company answered the bill, insisting that it had the right, under the terms of the contract, and because of the default, etc., of the plaintiff, to declare the said contract forfeited, and it avers that the said commission has jurisdiction over the subject-matter of the controversy, setting out that it had made complaint to the commission, in which complaint it had stated that it would not suspend switching services until after a hearing by said commission on its said complaint and a determination by said commission as to the merits of the controversy. But it is nevertheless insisted that the contract was terminated by the notice of its cancellation. It is sufficient to say that the contract referred to specifies the respective duties and obligations of the parties thereto, that the plaintiff charges that it has performed on its part and that the United Home Telephone Company has not, and that no real reason exists for forfeiting the contract, while the defendant telephone company avers that plaintiff has not performed and is not in condition as to equipment, and otherwise, to perform the contract on its part.

The answer having been filed, the defendant telephone company gave notice that it would bring on for determination before the court the questions raised by its answer whereby the right of plaintiff to bring or maintain the action is challenged, namely:

"1. Plaintiff has a complete, adequate and exclusive remedy for its grievances without resorting in the first instance to a court of chancery, and it cannot properly complain to a court of equity until it has first exhausted such other remedy.

"2. The Michigan railroad commission is the only tribunal having jurisdiction to hear the complaint of plaintiff.

"3. Plaintiff's equitable remedy, if it has any, can only be resorted to after it has first made complaint to the Michigan railroad commission, has been given a hearing thereon, and finds itself dissatisfied with the final order of said commission.

"4. Under the facts as stated in the amended bill of complaint and the answer of this defendant, the Michigan railroad commission has exclusive jurisdiction over the subject-matter of this suit.

"5. Inasmuch as defendant had filed a petition with the Michigan railroad commission prior to the commencement of this suit, complaining about the condition of plaintiff's telephone lines and equipment, and asking said commission for a hearing in said matter and that upon final hearing an order be made requiring said plaintiff to improve the condition of its lines and equipment so that the service that should be furnished over said defendant's lines would not be impaired and its efficiency interfered with, the filing of such petition gave jurisdiction to the Michigan railroad commission to act on said petition and, therefore, precludes this court from taking any action in said matter.

"6. The threatened action of defendant to discontinue switching service to plaintiff was based entirely on the improper and defective condition of plaintiff's lines and equipment and its failure to pay for service over the lines of defendant, and is, therefore, a subject over which the Michigan railroad commission alone has jurisdiction to investigate and pass upon."

At the hearing, counsel for defendant telephone company stated:

"We take this position, if your honor please, upon the whole record—that the amended bill of complaint in this case ought to be dismissed for the reasons set forth in the notice and the reasons set forth in our answer, but that in any event, if we are not entitled to an absolute dismissal of the bill of complaint that the only possible relief that the plaintiff company is entitled to at this time or will ever be entitled to would

be an order in which your honor should hold that the matters in controversy here, the complaints of the plaintiff against the United Home Telephone Company and the complaint of the United Home Telephone Company against the plaintiff as voiced in the petition on file with the Michigan railroad commission, are matters to be submitted to the Michigan railroad commission for investigation and determination, and that an order should be entered that all proceedings in this case be held in abeyance until these matters can be heard by the Michigan railroad commission, and that pending the hearing before the railroad commission of the matters in controversy here that the temporary injunction be allowed to stand."

The court entered the following order:

"In the above entitled cause, the said defendant, United Home Telephone Company, upon notice given pursuant to section 4 of chapter 14 of the judicature act of nineteen hundred fifteen, having brought up for determination by the court, questions raised in the answer of said defendant challenging the right of the said plaintiff to bring or to maintain this action against said defendants, and the court having heard counsel for the respective parties, with reference thereto, and being fully advised in the premises,

"It is hereby ordered that said questions be and the same are hereby determined adversely to the said defendant, United Home Telephone Company, and that this court has jurisdiction to hear, try and determine the issues set forth in the pleadings in this cause.

"It is further ordered that said plaintiff do recover costs against said defendant, United Home Telephone Company, including an attorney fee of ten dollars."

From the order an appeal was allowed, on application of the defendant telephone company.

After the hearing in this court, the appellant filed in this court the following paper, giving due notice thereof to counsel for plaintiff:

"Upon the oral argument of this case, a member of the court suggested to counsel for appellant that if the United Home Telephone Company would waive its

claim of forfeiture of contract with plaintiff, there would then be no reason why this controversy should not be heard and disposed of by the Michigan railroad commission. In view of this suggestion, and if now permitted by the court, the said defendant and appellant, United Home Telephone Company, will and hereby does waive any and all claims which it has, or which it may have heretofore made, that the contract mentioned and described in plaintiff's amended bill of complaint under which appellant was obligated to furnish switching and other service to plaintiff has been forfeited. Appellant makes and files this declaration of waiver for the further sufficient reason that it is informed and believes that it had no right or power to declare a forfeiture of said contract until after appellant's grievances against plaintiff had been presented to, passed upon, and adjudicated by, the Michigan railroad commission, and plaintiff had thereafter failed or refused to comply with the orders of said commission."

This paper writing evidences a misconception of the suggestion made upon the argument, which suggestion, in the form of a question or questions put to counsel for appellant, was that if appellant insisted upon a forfeiture of the contract and its threat to discontinue switching services the remedy of the plaintiff, and its only remedy to preserve the *status quo*, was an injunction, to grant which the court below had jurisdiction, the point of the suggestion being that but for the action of the defendant, forfeiting the contract, there would have been no law suit. The paper writing evidences another thing, however, of which plaintiff may choose to avail itself, namely, it admits that it had not the right to declare the contract at an end, which declaration brought about the beginning of this suit. See, in this connection, *City of Monroe* v. *Railway,* 187 Mich. 364.

In the brief for appellant it is said:

"The question presented for determination involves the right of a circuit court, in chancery, to enjoin

action by the Michigan railroad commission in matters exclusively within its original jurisdiction."

The position and attitude of the Michigan railroad commission is not disclosed by the record. No appearance has been entered in this court by said commission, and it does not appear that it answered the bill.

We are of opinion, as we were at the hearing, that the court below had and has jurisdiction to determine whether the appellant should be permitted to discontinue the furnishing of the service which in the said contract it agreed to furnish, interrupting and limiting, perhaps destroying in some degree, the business of the plaintiff, until the merits of the controversy, the issues tendered by the bill, are determined. We do not consider any question of the jurisdiction of the Michigan railroad commission, and certainly are not required to determine whether it ought to be relieved from the operation of an injunction about which it does not complain. We do not consider whether, if appellant had invoked the action of the Michigan railroad commission in the first instance, existing differences could have been determined by the order of the commission. The position of appellant in the court below—one position—was that it had the right, without consulting the Michigan railroad commission, to cancel the contract herein referred to and discontinue the rendering of services stipulated therein.

Under the circumstances, I affirm the jurisdiction of the court and its order, with costs to appellee.

FELLOWS, J. While the bill filed in this case sets up a notice given to plaintiff by the defendant on March 5, 1918, that further switching service would be refused on April 1st, the letter of April 17th contained an insistence that the matters in dispute growing out of switching services be taken up by the railroad commission and contained the following:

"We have no objection to this matter being referred to the railroad commission, in fact, we insist that this be done, if we continue to switch your telephones."

The bill also sets up a letter to plaintiff's secretary written by defendant's general manager on April 23d containing the following language:

"We have no desire to inconvenience you, your company or your patrons, and it seems to us that we have used every means to bring this matter to some sort of a settlement, but since you insist that we take the matter to the railroad commission, we wish to inform you that we are making application to the railroad commission for a hearing in the matter and are asking them to take what steps are necessary to bring the matter to a proper conclusion. We shall be governed by the orders and advice of the commission."

Apparently to forestall action by the railroad commission this bill was filed, but it was not filed until after the defendant, pursuant to its letter of April 23d, had filed its petition with the railroad commission. This petition was sworn to April 24th and was filed with the railroad commission on April 25th. The bill in this case was filed April 27th and the amended bill, making the commission a party, was filed April 30th. We, therefore, have, as I understand the case, the question of whether a court of equity may be appealed to by a public service corporation, a telephone company, for a decree for specific performance of a contract with another telephone company *after* the railroad commission has acquired jurisdiction of the controversy between the parties, and where the matter in difference between them grows out of a question of adequate service. The provision of the contract sought to be specifically enforced having reference to the physical connection between the properties of the two utilities.

I do not understand that my brother OSTRANDER'S opinion questions the regularity of the petition filed

by the defendant with the commission. Jurisdiction was conferred upon the commission when it was filed. That resort should in the first instance be had to the commission, unless the case is exceptional, is established by the decisions of this court. *City of Owosso v. Union Telephone Co.,* 185 Mich. 349; *City of Traverse City* v. *Citizens Telephone Co.,* 195 Mich. 373; *City of Cadillac* v. *Citizens Telephone Co.,* 195 Mich. 588; *City of Traverse City* v. *Michigan Railroad Commission,* 202 Mich. 575. Act No. 206, Pub. Acts 1913 (2 Comp. Laws 1915, § 6689 *et seq.*), declares telephone companies to be common carriers and places their general control with the railroad commission. By section 3 of the act it is provided:

\* \* \* "and the commission shall have power to' make, alter, amend or abolish any rate or charge for any service, and may regulate by rules or orders any service or facility; and it shall likewise prescribe the standard of construction and equipment that shall be maintained by any person, copartnership or corporation maintaining a physical connection between the lines and facilities of any such person, copartnership or corporation, and the lines and facilities of any other person, copartnership or corporation."

I apprehend this contemplates physical connections made by virtue of contracts as well as those made by order of the commission. By section 6 of the act the commission is authorized to require that physical connection between telephone properties be made. This section is valid. *Michigan State Telephone Co.* v. *Michigan Railroad Commission,* 193 Mich. 515.

It must be borne in mind that these two telephone companies, parties to this litigation, are public utility corporations; that their properties are charged with a public interest; that the question of quality of service is one in which the public is vitally interested. One of the prime purposes served by the enactment of legislation creating boards and commissions to su-

pervise the activities of these and similar companies, was that such public interest might be safeguarded by these public boards. Upon the hearing of defendant's petition the railroad commission may make such order as the rights of the parties and the public interest require. If the plaintiff is furnishing adequate facilities to comply with the contract and to discharge its duty to the public, defendant's petition will undoubtedly be denied. If it is not, the commission may require it to furnish such facilities as will not only require it to perform the terms of its contract but also perform its duty to the public. On the other hand, should this case run its course it will ultimately be determined whether defendant had ground for a forfeiture of the contract, whether plaintiff is performing its part of the contract and is furnishing adequate facilities. If plaintiff maintains its case a decree for specific performance will be entered. If it fails, its bill will be dismissed, defendant's forfeiture will become effective, it will be relieved of its contract obligation to perform switching service, and the public served by the two companies will be deprived of the benefit of the physical connection of the properties by a proceeding in which it is not a party. This situation was sought to be avoided by the creation of the railroad commission and the bestowal of broad powers upon it. I think it sufficient that we hold in the instant case, and that we should hold, that where the question involved is one of adequate service growing out of physical connection between two telephone companies, and the railroad commission had acquired jurisdiction before the institution of any proceedings in court, that such jurisdiction is to the exclusion of that of the courts except as provided by Act No. 145, Pub. Acts 1915 (2 Comp. Laws 1915, § 8134).

Considerable space in the brief of plaintiff's counsel is devoted to a discussion of the validity of the

railroad commission act, and the constitutional inhibition against the impairment of contracts. The validity of the railroad commission act as against the objections here urged has been repeatedly sustained. We have so recently considered the question whether the hands of the State in the exercise of its police power may be tied by existing private contracts (*Grand Rapids, etc., R. Co.* v. *Cobbs & Mitchell*, 203 Mich. 133), that we content ourselves with calling attention to that case and the authorities there cited.

I think the order of the circuit court should be reversed and the bill dismissed, with costs of both courts to appellant.

BIRD, C. J., and MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred with FELLOWS, J.